# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 10-2069

———————

Donald E. Moeller,                          *
                                            *
           Appellant,        *
                                            *
                                            *   Appeal from the United States
    v.                                  *   District Court for the
                                            *   District of South Dakota.
                                            *
Douglas Weber, Warden,                      *
South Dakota State Penitentiary,            *
                                            *
           Appellee.         *

———————

Submitted: June 16, 2011
Filed: August 12, 2011

———————

Before COLLOTON and BENTON, Circuit Judges, and KOPF,[1] District Judge.

———————

KOPF, District Judge.

      A South Dakota jury convicted Donald E. Moeller of first-degree murder and first-degree rape, and sentenced him to death. After the South Dakota Supreme Court affirmed his conviction and sentence and upheld the denial of his state habeas corpus

_____

     [1]The Honorable Richard G. Kopf, United States District Judge for the District of Nebraska, sitting by designation.

petition, Moeller filed a petition for writ of habeas corpus under 28 U.S.C. § 2254. The district court[2] denied Moeller's petition and we affirm.

## I.

On the evening of May 8, 1990, nine-year-old Rebecca O'Connell visited a convenience store. Later that night, O'Connell's parents reported her missing, and two men found her body the following morning in a wooded area in Lincoln County, South Dakota. An autopsy showed that O'Connell had been repeatedly raped, sustained knife wounds to multiple areas of her body, and ultimately died as a result of a cut to her jugular vein. *State v. Moeller*, 616 N.W.2d 424, 430 (S.D. 2000) ("*Moeller I*").

After a trial, a jury convicted Moeller of first-degree murder and first-degree rape, and sentenced him to death. The South Dakota Supreme Court reversed the conviction because prior bad acts evidence had been improperly introduced at trial. *State v. Moeller*, 548 N.W.2d 465, 468 (S.D. 1996). The State tried Moeller a second time for the same crimes. Moeller had the same counsel during both trials.

Prior to the start of Moeller's second trial, the trial court set January 13, 1997, as the date for a *Daubert* hearing regarding the admissibility of DNA evidence. On August 23, 1996, Moeller's counsel requested a continuance of the hearing, which the trial court denied. On December 11, 1996, prosecutors identified the DNA evidence they planned to introduce at trial, which would be the subject of the *Daubert* hearing.[3]

---

[2]The Honorable Lawrence L. Piersol, United States District Judge for the District of South Dakota.

[3]The State indicated that it planned to introduce evidence regarding several different DNA markers, including the D1S80 marker, the DQ-alpha marker, and the APO-B marker.

Moeller's counsel again sought a continuance of the *Daubert* hearing, which the trial court granted. The trial court continued the *Daubert* hearing to March 3, 1997. On February 19, 1997, Moeller's counsel sought another continuance of the *Daubert* hearing, arguing that they did not have time to review the evidence and adequately prepare. The trial court denied the continuance request, finding that Moeller's counsel had nearly three months to prepare and conduct testing of the State's evidence. At the *Daubert* hearing, Moeller's counsel received a standing objection to the admissibility of the DNA evidence, but did not conduct meaningful cross-examination of the State's experts, and Moeller did not present his own expert. The trial court permitted the DNA evidence, including evidence related to the APO-B marker, to be introduced at trial.

The State introduced this evidence through Moses Schanfield, an expert who had also previously performed some DNA analysis for Moeller. Schanfield testified about the APO-B marker and other DNA markers. During trial, Moeller's counsel thoroughly cross-examined Schanfield, and the State's other DNA experts, about their methodology, reliability, and control procedures of their testing. The State's experts testified that, based on testing conducted on semen taken from O'Connell's body, the DNA evidence demonstrated that the probability of a person in the Caucasian population having DNA characteristics common to Moeller's would be 1 in 130 million if the APO-B marker was not included. If the APO-B marker was included, the probability would be 1 in 14.8 billion.

The State also submitted the testimony of a soil expert, John Wehrenberg, at Moeller's second trial. Wehrenberg had testified at Moeller's first trial about his analysis of soil samples found at the crime scene and soil samples found on Moeller's truck and his finding that the soil may have come from the same place. Wehrenberg also testified at Moeller's first trial that both samples contained a rare mineral, gahnite. Prior to Moeller's second trial, Wehrenberg wrote a letter indicating that gahnite was "very rare." Moeller argued that this was an untimely, new conclusion

and requested that the trial court conduct a *Daubert* hearing regarding the soil evidence. The trial court rejected the request, but permitted Moeller to depose the expert prior to his testimony at the second trial.  During the second trial, Moeller's counsel cross-examined Wehrenberg extensively about his gahnite findings, and Moeller presented his own soil expert in response to Wehrenberg.

A jury again convicted Moeller of first-degree murder and first-degree rape. The penalty phase began one day later, with the same jury.  Neither side presented evidence or called witnesses during the penalty phase.  During penalty-phase deliberations, the jury sent the following question to the trial judge: "If the penalty of 'life imprisonment without parole' should be imposed upon the defendant, will he EVER have a chance to appear before a parole board?"  The word "EVER" was in all capital letters and underlined three times.  The trial judge, after consulting with the parties, answered the question as follows, "We acknowledge your note asking questions about life imprisonment without parole.  All of the information which I can give you is set forth in the jury instructions."  The jury instructions twice referred to the jury's sentencing options as "life imprisonment without parole," and also used the terms "life imprisonment" and "life sentence."  The verdict form included only two sentencing options:  "life imprisonment without parole" and "death."  The jury returned a sentence of death.

The South Dakota Supreme Court affirmed Moeller's conviction and sentence. *Moeller I*, 616 N.W.2d at 430.  Moeller then filed a state habeas corpus petition, which the trial court denied in its entirety, and the South Dakota Supreme Court affirmed the trial court's decision.  *Moeller v. Weber*, 689 N.W.2d 1, 4 (S.D. 2004) ("*Moeller II*").  Moeller filed a petition for writ of habeas corpus under 28 U.S.C. § 2254 in federal district court.  Moeller's petition asserted numerous claims, all of which the federal district court denied.  The district court granted Moeller a certificate of appealability limited to the following five issues:

A.  Whether Moeller is entitled to federal habeas corpus relief based on his trial counsel's performance at the March 3, 1997, *Daubert* hearing and the ultimate admission of expert testimony regarding the APO-B region of the DNA evidence;

B.  Whether Moeller is entitled to federal habeas corpus relief based on his trial counsel's failure to have tested the alleged gahnite which was the subject of the State's soil expert's testimony, and/or based on the trial court's failure to conduct a *Daubert* hearing and the subsequent admission of expert testimony regarding the alleged gahnite;

C.  Whether Moeller is entitled to federal habeas corpus relief based on the trial court's response to the jury's question regarding whether Petitioner would ever have a chance to appear before a parole board;

D.  Whether a pretrial screening requirement of the Due Process Clause of the Fifth Amendment requires that the aggravating circumstance upon which Moeller's death sentence was based be returned by a grand jury in an indictment or be set forth in an information under South Dakota law; and

E.  Whether Moeller is entitled to federal habeas corpus relief based on the trial court having admitted evidence of Moses Schanfield's DNA testing and Schanfield's testimony at Moeller's trial.

## *II.*

When a state court has adjudicated a habeas petitioner's claim on the merits, we may only conduct a very limited and extremely deferential review both as to the facts and the law. *See* 28 U.S.C. § 2254(d). With regard to the deference owed to factual

findings of a state court's decision, we are bound by those findings unless the state court made a "decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  Additionally, we must presume that a factual determination made by the state court is correct, unless the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).

Regarding deference owed to the application of the law under section 2254(d)(1), we may not grant a writ of habeas corpus unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  As explained by the Supreme Court in *Williams v. Taylor*, 529 U.S. 362 (2000), a state court acts contrary to clearly established federal law if it applies a legal rule that contradicts the Supreme Court's prior holdings or if it reaches a different result from one of that Court's cases despite confronting indistinguishable facts.  *Id.* at 399.  Further, "it is not enough for [the court] to conclude that, in [its] independent judgment, [it] would have applied federal law differently from the state court; the state court's application must have been objectively unreasonable."  *Rousan v. Roper*, 436 F.3d 951, 956 (8th Cir. 2006).

As the Supreme Court recently noted, "[f]or purposes of § 2254(d)(1), 'an *unreasonable* application of federal law is different from an *incorrect* application of federal law.'"  *Harrington v. Richter*, ___ U.S. ___, 131 S. Ct. 770, 785 (2011) (quoting *Williams v. Taylor*, 529 U.S. 362, 410 (2000)).  The Antiterrorism and Effective Death Penalty Act of 1996 "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents.  It goes no farther."  *Id.*  at 786. Put simply, "[i]f this standard is difficult to meet, that is because it was meant to be." *Id.*  Thus, "[i]t bears repeating that even a strong case for relief does not mean the state

court's contrary conclusion was unreasonable." *Id.* The Supreme Court further explained:

> Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. *Jackson v. Virginia*, 443 U.S. 307, 332, n.5, (1979) (Stevens, J., concurring in judgment). As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Harrington*, 131 S. Ct. at 786-87.

## III.

Moeller reasonably elected to concentrate his oral argument exclusively on his claim that he is entitled to habeas relief because the trial court's response to a jury question regarding Moeller's eligibility for parole was inadequate, leaving the remaining issues for consideration on the briefs. We address the issues in that same order.

Under the Due Process Clause of the Fourteenth Amendment, when a defendant's future dangerousness is put before the jury, the jury must be informed of the defendant's parole eligibility. *Simmons v. South Carolina*, 512 U.S. 154, 156 (1994). This requirement is based on the long-standing principle that "[t]he due process clause does not allow the execution of a person 'on the basis of information which he had no opportunity to deny or explain.'" *Id.* at 161 (citing *Gardner v. Florida*, 430 U.S. 349, 362 (1977)). The due process requirement may be satisfied "either by a jury instruction or in arguments by counsel." *Shafer v. South Carolina*, 532 U.S. 36, 39 (2001) (quoting *Ramdass v. Angelone*, 530 U.S. 156, 165 (2000)); *see*

*also Kelly v. South Carolina*, 534 U.S. 246, 253 (2002) (holding that the state raised the issue of future dangerousness and, under *Simmons*, the defendant was therefore entitled to a jury instruction regarding the defendant's eligibility for parole, where arguments of counsel were insufficient to inform the jury).[4]

In *Simmons*, the state raised the issue of future dangerousness of the defendant to the jury during the penalty phase of the defendant's capital murder trial. The trial court refused to instruct the jury regarding the defendant's parole ineligibility, and instead affirmatively instructed the jury "not to consider parole or parole eligibility in reaching" their sentencing verdict. *Id.* at 160. The trial judge further instructed the jury that "life imprisonment should be understood in its 'plain and ordinary' meaning." *Id.* at 170. The jury returned a sentence of death. *Id.* at 160. The Supreme Court held that such instructions were insufficient to satisfy the Due Process Clause because "the jury was left to speculate about [the defendant's] parole eligibility when evaluating [his] future dangerousness, and was denied a straight answer about [his] parole eligibility even when it was requested." *Id.* Thus, the Court held that "where the defendant's future dangerousness is at issue, and state law prohibits the defendant's release on parole, due process requires that the sentencing jury be informed that the defendant is parole ineligible." *Id.* at 156.

---

[4]To be precise, the clearly established federal law relevant to Moeller's petition is set forth in the holding of *Simmons*. *Kelly* and *Shafer* were decided after Moeller's conviction became final on direct appeal and we need not decide whether they constitute clearly established law for this case. *See Williams v. Taylor*, 529 U.S. 362, 412 (2000) (Supreme Court law that "would qualify as an old rule under . . . *Teague* jurisprudence will constitute 'clearly established Federal law, as determined by the Supreme Court of the United States' under § 2254(d)(1)") (citing *Teague v. Lane*, 489 U.S. 288 (1989); further citations omitted). That said, and as the *Moeller II* court implicitly determined, nothing in these more recent cases altered the rule in *Simmons* for purposes of Moeller's claim.

Moeller argues that the trial judge's response to the jury's question regarding whether he would ever appear before a parole board violated the clearly established federal law set forth in *Simmons*. The South Dakota Supreme Court addressed, and rejected, this argument in its entirety. *Moeller I*, 616 N.W.2d at 461. In doing so, the South Dakota Supreme Court determined that "future dangerousness was not specifically raised as a concern by [the] State," but regardless, "while not explicitly instructed that 'life means life,' the jury here was informed that a sentence of life imprisonment was 'life imprisonment without parole.' Indeed, those were the very words used on the sentence verdict form." *Id.* In light of this, "[a]sking the jury to refer back to the instructions as given was a proper reply, as the instructions correctly set forth the law." *Id.* at 461-62.

The South Dakota Supreme Court addressed this issue a second time during Moeller's state habeas corpus proceedings. *Moeller II*, 689 N.W.2d at 8-9. That court, applying *Simmons* and its progeny, reiterated its earlier decision and found that "[t]here is no ambiguity in an instruction which defines life imprisonment as 'life without parole.'" *Id.* at 8. Thus, the South Dakota Supreme Court determined that, "Moeller's constitutional rights were not violated by the trial court's instruction and subsequent response to the jury question. Indeed, any further explanation would have been at best redundant and at worst confusing. The trial court was correct in not elaborating on an already proper instruction." *Id.* at 8-9.

Much ink has been spilled on the question of whether the State raised Moeller's future dangerousness during either the guilt or penalty phases of his trial, and whether the due process requirement under *Simmons* was triggered at all. We find it unnecessary to decide that question.[5] Assuming the State raised Moeller's future

---

[5]To be clear, we make no determination regarding whether *Simmons* applies to cases in which the State raises future dangerousness of the defendant only during the guilt phase of a trial, nor do we find that the State raised the future dangerousness of Moeller during either the guilt or penalty phase of his trial.

dangerousness at trial, the trial court clearly instructed the jury that they could sentence Moeller to a term of "life imprisonment without parole" as the only alternative to "death." While Moeller is correct that the jury instructions used the terms "life imprisonment" and "life sentence," the verdict form itself included only two clear sentencing options: "life imprisonment without parole" or "death." Moeller has not cited any clearly established federal law stating that jury instructions and a verdict form instructing the jury that the alternative to a death sentence is "life imprisonment without parole" are in any way insufficient to satisfy the due process requirement set forth in *Simmons*. *See Knowles v. Mirzayance*, 556 U.S. 111, ___ (2009) ("But this Court has held on numerous occasions that it is not 'an unreasonable application of clearly established Federal law' for a state court to decline to apply a specific legal rule that has not been squarely established by this Court."). Indeed, the clearly established law required only that the jury be informed of Moeller's parole eligibility, either by jury instruction or in arguments of counsel. *See Shafer*, 532 U.S. at 39 (describing the holding of *Simmons*). The trial court did just that.

Affording the South Dakota Supreme Court the substantial deference it is due, we find that it reasonably applied *Simmons* and other clearly established federal law in rejecting Moeller's claim relating to the jury question. As such, Moeller is not entitled to relief under 28 U.S.C. § 2254 on this claim.

### *IV.*

We next turn to Moeller's claims that the South Dakota Supreme Court violated clearly established federal law when it determined that Moeller's counsel performed reasonably even though they (1) failed to actively participate in the *Daubert* hearing regarding DNA evidence; and (2) failed to test soil evidence from the crime scene and from Moeller's vehicle.

We review ineffective assistance of counsel claims under the familiar framework set forth in *Strickland v. Washington*, 466 U.S. 668, 694 (1984).

*Strickland* requires that a petitioner demonstrate both that his counsel's performance was deficient, and that such deficient performance prejudiced the petitioner's defense. *Id.* at 687; *see also Bryson v. United States*, 268 F.3d 560, 561-62 (8th Cir. 2001); *Williamson v. Jones*, 936 F.2d 1000, 1004 (8th Cir. 1991). In conducting such a review, we must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Put simply, counsel's "strategic choices made after thorough investigation are virtually unchallengeable" in a later habeas corpus action. *Id.*

Additionally, the Supreme Court has emphasized that the deference due the state courts under 28 U.S.C. § 2254 applies with vigor to decisions involving ineffective assistance of counsel claims. *Knowles*, 556 U.S. at 111. In *Knowles*, the Justices stressed that under the *Strickland* standard, the state courts have a great deal of "latitude" and "leeway," which presents a "substantially higher threshold" for a federal habeas petitioner to overcome. Indeed, the question "is not whether a federal court believes the state court's determination" under the *Strickland* standard "was incorrect but whether that determination was unreasonable–a substantially higher threshold." *Id.* at ___ (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)).

The record is undisputed that Moeller's counsel did not actively participate in the DNA-related *Daubert* hearing. However, the South Dakota Supreme Court determined that Moeller's challenge to the DNA evidence related only to "APO-B DNA evidence," and that, even if the APO-B DNA evidence had been excluded, the remaining DNA evidence showed that "the probability of a person in the Caucasian population having DNA characteristics common to Moeller's would be 1 in 130 million." *Moeller II*, 689 N.W.2d at 10-11. Because Moeller submitted "no testimony or other evidence that might have led to the exclusion of any DNA evidence based on any marker other than the APO-B marker at the *Daubert* hearing," Moeller did not "realistically demonstrate that the performance of his defense attorneys in regard to most of the DNA evidence was ineffective." *Id.* at 10.

The South Dakota Supreme Court further found that Moeller's counsel's failure to participate in the *Daubert* hearing was a trial strategy and that counsel "vigorously" and "effectively" challenged all of the DNA evidence at trial, including the APO-B DNA evidence. *Id.* In particular, counsel cross-examined the State's DNA experts and secured critical admissions from those experts, called into question the validity of all of the DNA evidence in closing argument, and used the lack of validation of the APO-B DNA evidence to call into question all of the other DNA evidence. *Id.* Taking into consideration counsel's conduct during trial, the South Dakota Supreme Court applied *Strickland* and determined that counsel's strategy was reasonable and that Moeller suffered no prejudice as a result of his counsel's strategy. *Id.* at 10-11.

Moeller argues the South Dakota Supreme Court violated clearly established law when it considered counsel's handling of the DNA evidence during the entire trial, rather than only during the DNA-related *Daubert* hearing.[6] We have found no clearly established law, nor has Moeller cited to any, that prevents a state court from considering counsel's entire performance at trial when determining his or her effectiveness at a pretrial evidentiary hearing. Granting substantial deference to the South Dakota Supreme Court's opinions, we find that it did not unreasonably apply *Strickland* and other clearly established federal law in rejecting Moeller's claim relating to the DNA *Daubert* hearing.

Regarding Moeller's other ineffective assistance of counsel claim, the South Dakota Supreme Court determined that counsel performed reasonably when they

---

[6]Moeller also argues that the South Dakota Supreme Court violated clearly established federal law in applying *Strickland*, rather than *United States v. Cronic*, 466 U.S. 648, 659 (1984), because the DNA *Daubert* hearing was a critical stage of the proceeding at which Moeller was effectively denied counsel. However, Moeller cites no clearly established federal law stating that a *Daubert* hearing is a critical stage of the proceeding, thus implicating a *Cronic* analysis, rather than a *Strickland* analysis. The South Dakota Supreme Court therefore did not violate clearly established federal law in applying *Strickland* to Moeller's ineffective assistance of counsel claim.

-12-

failed to test mineral evidence submitted by the State because they actively pursued another challenge to the mineral evidence. In particular, "defense counsel chose to proceed with a theory that the State's expert was mistaken in his conclusion that a soil analysis could isolate any locale in the eastern part of the State. . . . Proceeding under such a theory was neither unreasonable nor ineffective." *Id.* at 11. As such, the South Dakota Supreme Court did not unreasonably apply clearly established federal law and no relief is warranted under 28 U.S.C. § 2254.[7]

In addition to his ineffective assistance of counsel claims, Moeller argues that he is entitled to habeas corpus relief because the trial court ultimately admitted both the APO-B region of the DNA evidence and the expert testimony regarding gahnite. Applying federal law, the South Dakota Supreme Court rejected both of these claims. As to the admission of the APO-B region of DNA evidence, the South Dakota Supreme Court noted that the state habeas corpus court "effectively conducted what might be referred to as a 'post-conviction' *Daubert* hearing," at which Moeller still failed to "convince the habeas court that the evidence based on the ABO-B marker failed to meet [South Dakota's] admission standards." 689 N.W.2d at 12. Thus, while the APO-B DNA evidence "may not have satisfied every critic," "perfect agreement is not a prerequisite to admission of scientific evidence." *Id.* at 13-14.

---

[7]Moeller's argument rests, in part, on evidence presented during the state habeas corpus proceedings that gahnite was not actually present in the sample tested by the State's expert. For a variety of reasons, the South Dakota Supreme Court rejected this argument, finding that the "newly discovered evidence" did not amount to a constitutional violation. *Moeller II*, 689 N.W.2d at 7-8. This is especially true because Moeller's counsel had the samples prior to the second trial, but reasonably chose not to test them, electing instead to proceed with its alternative theory that a soil analysis could not isolate any particular location in the eastern part of South Dakota. *Id.* The South Dakota Supreme Court's findings do not violate clearly established federal law, and to the extent Moeller's ineffective assistance of counsel claim rests on the "newly discovered" gahnite evidence, we reject it.

Regarding the admission of the gahnite testimony, and the trial court's failure to conduct a *Daubert* hearing regarding that testimony, the South Dakota Supreme Court found that a May 1991 report mentioned gahnite as being of "substantial interest," and that Moeller's counsel had therefore been placed "on notice that gahnite had been identified as a possible piece of evidence linking him to the crime scene." *Moeller I*, 616 N.W.2d at 447. Thus, there was no "late disclosure." Further, the South Dakota Supreme Court applied federal law and determined that a *Daubert* hearing was unnecessary because "the challenged evidence did not present any new scientific theory, and the methodologies were neither complex nor unusual," and "there was no evidence in the record that Wehrenberg's methodology or analysis was so skewed as to alter the otherwise reliable scientific method." *Id.* at 449.

As with his ineffective assistance of counsel claim, we find that the South Dakota Supreme Court did not unreasonably apply clearly established federal law in rejecting both of Moeller's claims relating to the subsequent admission of evidence based on those claims.

## V.

The South Dakota Supreme Court also rejected Moeller's remaining claims. Regarding Moeller's argument that he is entitled to habeas corpus relief because the State's DNA expert, Schanfield, conducted DNA testing for both him and the State, the South Dakota Supreme Court noted the "considerable conflict of authority as to under what circumstances an expert witness retained by one party will be allowed to testify upon request of the other party." *Moeller I*, 616 N.W.2d at 444. Applying this conflicting law, the South Dakota Supreme Court determined that, "[t]here was no abuse of discretion in admitting Schanfield's expert testimony, because both sides were aware that he was performing work for the other side. While we do not condone such practice by any witness, we see no prejudice." *Id.* at 445.

-14-

The South Dakota Supreme Court also considered and rejected Moeller's final argument, that any aggravating circumstance must have been returned in an indictment or set forth in an information under South Dakota law.[8] In doing so, that court applied federal law and determined that the eight-month "notice of aggravating factors given to Moeller was sufficient." *Moeller II*, 689 N.W.2d at 21. Thus, "[i]nsofar as Moeller had considerable advance notice of the aggravating factors to be considered in the sentencing phase of his case and the jury considered those factors and found them to exist beyond a reasonable doubt, *Ring*'s holding, if applicable, has been followed here." *Id.* (citing *Ring v. Arizona*, 536 U.S. 584, 584 (2002)).

After reviewing the record, and the South Dakota Supreme Court's opinions, we find that it did not violate clearly established federal law in making its determinations on these remaining claims. Additionally, Moeller has not submitted any clear and convincing evidence that the South Dakota Supreme Court's decisions were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Moeller is not entitled to relief under 28 U.S.C. § 2254 on these remaining claims.

For the foregoing reasons, the judgment of the district court is affirmed.

_____

[8]Since Moeller did not brief this claim, he has waived it. Nonetheless, since the district court granted a certificate of appealability regarding the claim, we briefly address it.