**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-9001
_____

HARVEY MIGUEL ROBINSON,
                                        Appellant

v.

SECRETARY, PENNSYLVANIA
DEPARTMENT OF CORRECTIONS;
SUPERINTENDENT, GREENE SCI;
SUPERINTENDENT, ROCKVIEW SCI
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2:06-cv-00829)
District Judge: Honorable Joseph F. Leeson, Jr.
_____

Argued: November 28, 2023

Before: JORDAN, HARDIMAN, and BIBAS, *Circuit Judges*

(Filed: April 4, 2024)
_____

Eric J. Montroy
Eric P. Motylinski         **[ARGUED]**
FEDERAL COMMUNITY DEFENDER OFFICE
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
601 Walnut Street
The Curtis Center, Suite 540 West
Philadelphia, PA 19106
    *Counsel for Appellant*

Heather F. Gallagher        **[ARGUED]**
LEHIGH COUNTY DISTRICT ATTORNEY'S OFFICE
455 W. Hamilton Street
Allentown, PA 18101
    *Counsel for Appellees*

————————————

OPINION OF THE COURT

————————————

BIBAS, *Circuit Judge*.

In weighing life and death, a jury must understand its options. It may not sentence a defendant to die because it falsely fears that he might one day be paroled. If the prosecution raises the specter of the defendant's future dangerousness and clarification is needed, the judge must make sure the jury understands the law.

The judge here did that. Harvey Robinson was not eligible for parole. Yet at his capital sentencing, the judge first speculated that parole law might change. He then retracted that speculation and correctly told the jury: "There won't be any parole. Life is life." Because that correction cured any error, we will affirm the District Court's denial of habeas.

## I. THE MURDER CONVICTION AND DEATH SENTENCE

Three decades ago, Robinson stalked, raped, and killed three women. He also raped another woman and repeatedly tried to kill her. A Pennsylvania jury convicted him of one count of rape and multiple counts of burglary and other crimes, plus three counts of first-degree murder.

For each murder, the prosecution sought the death penalty. To persuade the jury, the prosecution repeatedly warned that Robinson was a dangerous predator who would continue to commit crimes if he ever got out of prison. After hearing these arguments, a juror asked the judge: "On the life in prison, is that without parole, just so we're sure? Would there be a chance of parole if [we sentence Robinson to] life in prison?" App. 209. The judge responded, "that's the present law, [b]ut … the legislature [might] change[] the law." App. 210. After the prosecution asked for a sidebar, the judge realized he "ha[d] misspoken." *Id.* He then changed his instruction to retract his prior speculation: "I'm to tell you, and it's accurate, 'Life is life.' There won't be any parole. Life is life." App. 211. The jury then sentenced Robinson to death.

On appeal, the Pennsylvania Supreme Court affirmed. *Commonwealth v. Robinson*, 864 A.2d 460, 520 (Pa. 2004). It held that (1) the prosecution had not made an issue of Robinson's future dangerousness; and (2) in any event, there was no error in the instruction given by the trial court. *See id.* at 515–16. State courts then denied him collateral relief, as did the federal district court. *Commonwealth v. Robinson*, 82 A.3d 998, 1000 (Pa. 2013); App. 3, 22. We granted him a certificate of appealability to consider whether the trial court's

3

instructions on parole ineligibility violated *Simmons v. South Carolina*, 512 U.S. 154 (1994).

We review deferentially. Because no facts are disputed, we can grant habeas only if the Pennsylvania Supreme Court's ruling on the merits "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. §2254(d)(1). It was not. The state court's second rationale—that the sentencing judge answered the juror's question properly—was not just reasonable, but right.

## II. THE JURY INSTRUCTIONS SATISFIED *SIMMONS*

Jurors sometimes sentence defendants to death out of fear for public safety. And prosecutors sometimes play on this fear by emphasizing a defendant's dangerousness. A defendant's best response may be that he will never get out of prison. *Simmons*, 512 U.S. at 163–64 (plurality opinion); *see id.* at 176 (O'Connor, J., concurring in the judgment). So when a prosecutor suggests that a capital defendant will be dangerous, "due process entitles the defendant to inform the jury of his parole ineligibility." *Shafer v. South Carolina*, 532 U.S. 36, 39 (2001) (cleaned up). Either the judge or defense counsel must then tell the jury that the defendant is not eligible for parole, despite the prosecution's contrary suggestion. *Simmons*, 512 U.S. at 177 (O'Connor, J., concurring in the judgment).

Robinson would not have been eligible for parole. And though the prosecution did argue that he was dangerous, the judge instructed the jury that he was not eligible for parole. That was enough.

4

### A. The prosecution put future dangerousness at issue

The prosecution raised "the clear implication of future dangerousness … and placed the case within the four corners of *Simmons*." *Kelly v. South Carolina*, 534 U.S. 246, 255 (2002). First, it called Robinson "a territorial predator," "somebody who goes out and commits crimes." App. 136, 179. Then it went further, warning: "*when* he gets out, ladies and gentlemen, watch out." App. 179 (emphasis added). That statement implied not only that he *could* get out, but that he *would*. Any one of these statements could have triggered a *Simmons* instruction. Collectively, they certainly do. So on this point, the state court's contrary holding was unreasonable under any standard.

### B. The court explained that Robinson could not get parole

But the Pennsylvania Supreme Court got the other merits issue right. An effective *Simmons* instruction must clarify that the defendant cannot get parole. *Simmons*, 512 U.S. at 177–78 (O'Connor, J., concurring in the judgment). It is not enough to say that the defendant will "die in prison after spending his natural life there" or that "life imprisonment means until the death of the defendant." *Kelly*, 534 U.S. at 257 (cleaned up) (quoting *Shafer*, 532 U.S. at 52). True, the jury may hear "truthful information regarding the availability of commutation, pardon, and the like." *Simmons*, 512 U.S. at 177 (O'Connor, J., concurring in the judgment). Yet it must also hear that, apart from those exceptions, the defendant will not be eligible for parole, at least under current law. *Id.* at 178.

Here, both sides agree that the judge's first statement was problematic. When asked about parole, he speculated about possible changes to the law, suggesting that the law was

unsettled. Even if that speculation did not violate *Simmons*, the wiser course would have been to state current law without speculating.

But we need not decide whether this speculation violated *Simmons* because the judge promptly fixed it. After the prosecution objected, the judge stated, "I must have misspoken somewhere." App. 210. And after the sidebar, he told the jury, "I'm to tell you, and it's accurate, 'Life is life.' There won't be any parole. Life is life." App. 211. That answer cleared up any doubt. These final words rang in the jurors' ears as they went to deliberate. *See Weeks v. Angelone*, 528 U.S. 225, 234 (2000) ("A jury is presumed to follow [the court's] instructions … [and] to understand a judge's answer to its question." (citation omitted)). So even if the judge's first statement was wrong, he quickly retracted it, curing any error. Thus, under any standard of review, the Pennsylvania Supreme Court properly rejected Robinson's claim.

\* \* \* \* \*

When the prosecution indicates that a capital defendant who is ineligible for parole will be dangerous to society, the defendant has a right to inform the jury of the law. The trial judge did that: He retracted his speculation and gave a clear *Simmons* instruction. Because there was ultimately no error, we will affirm the District Court's denial of habeas corpus.

6