573 S.E.2d 796

**The STATE, Respondent,**

v.

**Wesley Aaron SHAFER, Jr., Appellant.**

No. 25562.

Supreme Court of South Carolina.

Heard Oct. 8, 2002.

Decided Nov. 25, 2002.

David I. Bruck, Robert E. Lominack, and William Norman Nettles, of Columbia, for appellant.

Attorney General Charles M. Condon, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Donald J. Zelenka, Assistant Attorney General S. Creighton Waters, of Columbia; and Thomas E. Pope, of York, for respondent.

Justice MOORE:

This case is before us upon remand from the United States Supreme Court. Previously, in *State v. Shafer*, 340 S.C. 291, 531 S.E.2d 524 (2000), we held appellant, a capital defendant, was not entitled to a jury instruction that he was parole ineligible because *Simmons v. South Carolina*, 512 U.S. 154, 114 S.Ct. 2187, 129 L.Ed.2d 133 (1994)[1] was inapplicable under the state's new sentencing scheme.[2]

The United States Supreme Court reversed, finding *Simmons* was applicable to the state's new sentencing scheme.

---

**1.** In *Simmons, supra,* the United States Supreme Court held that due process is violated where a trial judge refuses to instruct a sentencing jury that, under South Carolina law, life imprisonment meant no possibility of parole, where a death sentence is secured, at least in part, due to the defendant's future dangerousness.

**2.** South Carolina's sentencing scheme, which became effective on January 1, 1996, states that a capital jury must first decide whether the prosecution has proved beyond a reasonable doubt the existence of any statutory aggravating circumstance. If the jury fails to agree unanimously on the presence of a statutory aggravator, it does not make a sentencing recommendation, and the trial judge, in that event, sentences the defendant to either life imprisonment or a mandatory minimum term of thirty years imprisonment. S.C.Code Ann. § 16–3–20(B). If, on the other hand, the jury unanimously finds a statutory aggravator, the jury then recommends one of two potential sentences—death or life imprisonment without the possibility of parole. S.C.Code Ann. §§ 16–3–20(A), (B). No sentencing option other than death or life without parole is available to the jury.

*Shafer v. South Carolina,* 532 U.S. 36, 121 S.Ct. 1263, 149 L.Ed.2d 178 (2001). The Court held that whenever future dangerousness is at issue in a capital sentencing proceeding under South Carolina's new scheme, due process requires that the jury be informed that a life sentence carries no possibility of parole. *Shafer,* 532 U.S. at 51, 121 S.Ct. at 1273. However, the Court remanded the case for us to determine whether the prosecutor's evidentiary submissions or closing argument in fact placed appellant's future dangerousness at issue. *Id.* at 54–55, 121 S.Ct. at 1274–1275.

## FACTS

Appellant was charged with murder, attempted armed robbery, and conspiracy for his involvement in the shooting of a convenience store clerk. After the jury found appellant guilty as charged, his trial entered the penalty phase.

During the penalty phase, the State introduced evidence of appellant's criminal record, probation violations, and misbehavior in prison. The State introduced the following evidence:

(1) appellant was convicted of burglary and criminal sexual conduct (CSC) at age seventeen, after he and others confessed to taking two twelve-year-old girls to an empty house and having sexual intercourse and fellatio with them;

(2) after receiving a probationary sentence for his burglary and CSC convictions, appellant violated probation by being rearrested for burglary and driving under suspension, by twice testing positive for marijuana, and by failing to report both to his probation officer and to court-ordered sex offender counseling;

(3) on the night of his arrest for murder, appellant asked a jailer whether his father would get his pistol back after it had been seized as the murder weapon;

(4) while awaiting trial on the murder charge, appellant was charged with assaulting a female staff member at the Detention Center after he became enraged and verbally abusive because she turned off the telephones;

(5) while in jail, appellant was charged with possession of contraband for illegally possessing and smoking cigarettes; and

(6) when discussing the murder with a fellow jail inmate shortly after his arrest, appellant acted as if the murder didn't even bother him.

During an *in camera* hearing on jury instructions, the State argued that it had not made future dangerousness an issue in the case nor would it be arguing future dangerousness in closing argument and therefore appellant was not entitled to a charge on parole ineligibility. Defense counsel protested on the ground the State should not be allowed to introduce evidence of future dangerousness, and then say they were not going to argue it and thereby avoid a charge on the law. The State countered that the evidence was introduced to show appellant's character and to show his adaptability to prison, not future dangerousness.

The trial judge ruled that parole ineligibility would not be charged unless the State argued future dangerousness.

Defense counsel then sought permission to read in his closing argument to the jury lines from the controlling statute, S.C.Code Ann. § 16–3–20(A), stating plainly that a life sentence in South Carolina carries no possibility of parole. Section 16–3–20(A) provides:

> If the State seeks the death penalty and a statutory aggravating circumstance is found beyond a reasonable doubt pursuant to subsections (B) and (C), and a recommendation of death is not made, the trial judge must impose a sentence of life imprisonment. For purposes of this section, life imprisonment means until death of the offender. No person sentenced to life imprisonment pursuant to this section is eligible for parole, community supervision, or any early release program, nor is the person eligible to receive any work credits, education credits, good conduct credits, or any other credits that would reduce the mandatory life imprisonment required by this section.

The trial judge denied the request.

In closing argument, the State discussed a video that portrayed the aftermath of the victim's murder, where some girls discovered the victim's body. The State argued the following:

> ... do you remember the girls that came in and when Jamie Palmer was saying, Oh God; oh, God; Ray, Ray and the girls were running in and out, we've got to go, we've got

to go, ... but what is really etched in my mind is Monica Inman. Remember Jamie picks up the phone and she's calling 911, and Monica Inman says come on, Jamie, *they might come back, they might come back.*

... So that the next time somebody with a pistol thinks about loading up, coming across that river to Lockhart, over to Jonesville or out to Buffalo or anywhere in this county, *and they might come back, they might come back,* they will remember this day, and they will remember this jury, and they will remember this verdict.

(Emphasis added).

At the conclusion of the argument, defense counsel renewed the request for a life without parole charge on the grounds that the State again raised future dangerousness by discussing Jamie's fear that they might come back, they might come back. The trial court ruled, Well, I listened very carefully because I have to admit I had some concern when that argument was entered into as to whether we had crossed the line.... I find that it comes close, but did not; so, I deny [appellant's] motion.

Instructing the jury, the judge explained:

If you do not unanimously find the existence of the aggravating circumstance as set forth on the form [murder during the commission of an attempted armed robbery], you do not need to go any further.

If you find unanimously the existence of a statutory aggravating circumstance ... you will go further and continue your deliberations.

Once you have unanimously found and signed as to the presence of an aggravated circumstance, you then further deliberate, and determine whether or not Wesley Aaron Shafer should be sentence[d] to life imprisonment or death.

The judge told the jury twice that life imprisonment means until the death of the defendant. After the judge instructed the jury, the defense again renewed its objection that the statutory language on parole ineligibility was not charged. The objection was overruled.

After about three and a half hours into sentencing deliberations, the jury sent a note to the trial judge containing two

questions: (1) Is there any remote chance for someone convicted of murder to become eligible for parole?; and (2) Under what conditions would someone convicted for murder be eligible?[3]

Defense counsel again urged the court to read to the jury the previously requested portion of § 16–3–20(A). Counsel argued the judge's charge, which partially quoted from § 16–3–20 (life imprisonment means until death of the offender), omitted the portion of the statute that explained what until death of the offender means.

The trial judge decided not to charge the jury about parole ineligibility, and instructed the jury:

Section 16–3–20 of our Code of Laws as applies to this case in the process we're in, states that, quote, for the purposes of this section life imprisonment means until the death of the offender. Parole eligibility or ineligibility is not for your consideration.

The jury returned one hour and twenty minutes later. The jury unanimously found beyond a reasonable doubt the aggravating factor of murder while attempting armed robbery, and recommended the death penalty. After the jury was polled as to their assent to the aggravating circumstance finding and to the death penalty recommendation, defense counsel requested the jury be polled on the specific question as to whether parole eligibility, their belief therein, gave rise to the verdict. The judge denied the request and imposed the death sentence.

## ISSUES

I. Whether future dangerousness was an issue in appellant's case such that he was entitled to a parole ineligibility instruction?

II. Whether the Court should follow the rule of *Yarbrough v. Commonwealth,* 258 Va. 347, 519 S.E.2d 602 (1999), to require that sentencing juries be instructed on parole eligibility in all cases?

III. Whether the sentencing jury should be informed that a life without parole sentence does not necessarily mean the defendant will never be released from prison?

---

3. The parties agreed the second question could not be answered.

198

I

Following appellant's trial and his appeal, the United States Supreme Court expanded the law governing whether the evidence submitted by or the argument of the prosecution raises future dangerousness. *Kelly v. South Carolina*, 534 U.S. 246, 122 S.Ct. 726, 151 L.Ed.2d 670 (2002). In *Kelly*, the Court found that evidence of violent behavior in prison can raise a strong implication of generalized future dangerousness.[4] The *Kelly* Court stated [a] jury hearing evidence of a defendant's demonstrated propensity for violence reasonably will conclude that he presents a risk of violent behavior, whether locked up or free, and whether free as a fugitive or as a parolee. 534 U.S. at ——, 122 S.Ct. at 731.

The Court stated that evidence of dangerous 'character' may show 'characteristic' future dangerousness. 534 U.S. at ——, 122 S.Ct. at 732. Further, the Court stated that [e]vidence of future dangerousness under *Simmons* is evidence with a tendency to prove dangerousness in the future; its relevance to that point does not disappear merely because it might support other inferences or be described in other terms. 534 U.S. at ——, 122 S.Ct. at 732.

As for the prosecution argument in *Kelly*, the Court found [t]he prosecutor accentuated the clear implication of future dangerousness raised by the evidence and placed the case within the four corners of *Simmons*. 534 U.S. at ——, 122 S.Ct. at 732. The Court found the following portions of the prosecution argument important: (1) the prosecution expressed its hope the jurors would never in [their] lives again have to experience ... [b]eing some thirty feet away from such a person; (2) the prosecution characterized Kelly as a dangerous bloody butcher, and while those statements went to retribution, they also implied Kelly would be dangerous in the future; (3) the prosecution stated Kelly was more frightening than a serial killer and that murderers will be murderers. With these facts, the Court found that Kelly's jury, like its predecessor in *Simmons*, [was] invited to infer 'that petitioner

4. The *Kelly* prosecutor introduced evidence that Kelly took part in escape attempts, carried a shank, and had been caught carrying a weapon and planning or participating in escape attempts.

is a vicious predator who would pose a continuing threat to the community.' 534 U.S. at ——, 122 S.Ct. at 732–33.

■ Applying the *Kelly* analysis to the evidence introduced by the State in appellant's case, we conclude the State made future dangerousness an issue. The evidence presented addressed appellant's character and adaptability to prison, as the State argued at trial; however, the evidence also tended to show that appellant could be dangerous in the future. The relevance of the evidence to future dangerousness did not disappear merely because the evidence supported other inferences. As *Kelly* noted, evidence of violent behavior in prison can raise a strong implication of generalized future dangerousness. Here, the State presented evidence that appellant became enraged and verbally abusive to a staff member of the Detention Center when she turned off the telephones.

The State also introduced evidence that appellant was incapable of following rules by showing he had violated his probation in the past and had been charged for possession of contraband in the jail. Further, the State showed that appellant was a repeat criminal offender. While this evidence implied that appellant had a bad character, the evidence also raised the implication of future dangerousness such that appellant was entitled to an instruction on parole ineligibility.

The State's penalty phase closing argument also raised future dangerousness. The language, they might come back, they might come back, in the State's argument implied that appellant might come back and commit future crimes if he is not executed. This language is similar to language in *Kelly* where the prosecutor informed the jurors that he hoped they would never in their lives have to experience being thirty feet away from such a person as Kelly. The *Kelly* Court found that language accentuated the clear implication of future dangerousness raised by the evidence in *Kelly*.

The State admits that some of the evidence it introduced was the sort of *evidence Kelly* found to have the tendency to raise future dangerousness. However, the State argues that because it did not *argue* that evidence during appellant's penalty phase, a claim with which we disagree, this case falls

outside of *Kelly*. The State alleges that footnote 4 of *Kelly*[5] requires that *both* evidence of future dangerousness *and* argument on future dangerousness must exist for the defense to be entitled to the parole ineligibility instruction.

Contrary to the State's argument, this footnote does not make such an assertion. Initially, we note the United States Supreme Court's clear instructions to this Court were to determine whether the prosecutor's evidentiary submissions *or* closing argument in fact placed appellant's future dangerousness at issue. Also, the majority language in *Kelly* belies such an assertion. For instance, the *Kelly* Court noted that this Court posed the legal issue accurately in *Kelly*, for in considering the applicability of *Simmons* [this Court] asked whether Kelly's future dangerousness was 'a logical inference from the evidence,' *or* was 'injected into the case through the State's closing argument.' 534 U.S. at ――, 122 S.Ct. at 731 (emphasis added).

Further, the State's argument is illogical because if the State succeeded in this argument, then the State would have the ability to introduce evidence raising a defendant's future dangerousness, but avoid a parole ineligibility instruction simply by being careful not to argue future dangerousness. This tactic would undermine the *Simmons* line of cases.

## II

Appellant argues the Court should follow the rule of *Yarbrough v. Commonwealth*, 258 Va. 347, 519 S.E.2d 602 (1999), to require that sentencing juries be instructed on parole eligibility in all capital cases.

---

5. Footnote 4 states:

As THE CHIEF JUSTICE says ... it may well be that the evidence in a substantial proportion, if not all, capital cases will show a defendant likely to be dangerous in the future.... But this is not an issue here, nor is there an issue about a defendant's entitlement to instruction on a parole ineligibility law when the State's evidence shows future dangerousness but the prosecutor does not argue it. The only questions in this case are whether the evidence presented and the argument made at Kelly's trial placed future dangerousness at issue. The answer to each question is yes; and we need go no further than *Simmons* in our discussion.

534 U.S. at ――, n. 4, 122 S.Ct. at 732, n. 4.

In *Yarbrough v. Commonwealth, supra,* the Virginia Supreme Court held:

in response to a proffer of a proper instruction from the defendant prior to submitting the issue of penalty-determination to the jury or where the defendant asks for such an instruction following an inquiry from the jury during deliberations, the trial court shall instruct the jury that the words 'imprisonment for life' mean 'imprisonment for life without possibility of parole.'

*Yarbrough,* 519 S.E.2d at 616. The *Yarbrough* court emphasized that the defendant must request the instruction and the trial court is not required to give the instruction *sua sponte. Id.* at 616, n. 11.

■ We do not find any reason for adopting the *Yarbrough* rule because the Legislature has already adopted such a rule. The Legislature amended S.C.Code Ann. § 16–3–20 (Supp. 2001), effective May 28, 2002, to revise the definition of life imprisonment and provide that, when requested by the state or the defendant, the judge must charge the jury in his instructions that life imprisonment means until the death of the defendant without the possibility of parole, and in cases where the defendant is eligible for parole, the judge must charge the applicable parole eligibility statute. Accordingly, by legislative amendment, appellant has received the relief he requests.

### III

■ The State argues a capital sentencing jury should be informed that a life without parole sentence does not necessarily mean the defendant will never be released from prison.

In South Carolina, the Department of Probation, Parole, and Pardon Services (Parole Board) has the sole authority, upon request by the Department of Corrections, to alter a life without parole sentence via a pardon or parole. *See* S.C.Code Ann. § 17–25–45 (Supp.2001); S.C.Code Ann. § 24–21–970 (1989). A person sentenced to life without parole may be paroled if the following occurs:

(1) the Department of Corrections requests the Department of Probation, Parole, and Pardon Services to consider the person for parole; and

(2) the Department of Probation, Parole, and Pardon Services determines that due to the person's health or age he is no longer a threat to society; and

(a) the person has served at least thirty years of the sentence imposed pursuant to this section and has reached at least sixty-five years of age; or

(b) the person has served at least twenty years of the sentence imposed pursuant to this section and has reached at least seventy years of age; or

(c) the person is afflicted with a terminal illness where life expectancy is one year or less; or

(d) the person can produce evidence comprising the most extraordinary circumstances.

S.C.Code Ann. § 17–25–45(E) (Supp.2001). Further, a life without parole inmate can be considered for pardon if the inmate is afflicted with a terminal illness where life expectancy is one year or less. S.C.Code Ann. § 24–21–970 (1989).

Given that a life without parole sentence is generally immutable under South Carolina law, a charge regarding the possibility of pardon or parole is too speculative. We find the State is not entitled to such a charge.

## CONCLUSION

We find a parole ineligibility instruction was warranted in the sentencing phase of appellant's trial because the prosecution made future dangerousness an issue in his trial. Accordingly, we remand for resentencing. We further note that, given the United States Supreme Court's decision in *Kelly*, the better practice is for trial judges to give the capital sentencing jury a parole ineligibility charge whether it is requested or not.

**REMANDED.**

TOAL, C.J., WALLER, BURNETT, JJ., concur.

PLEICONES, J., concurring in a separate opinion.

Justice PLEICONES:

I agree that we should remand this case for a new sentencing proceeding. Consistent with my dissent in *State v. Kelly,*

343 S.C. 350, 540 S.E.2d 851 (2001), I would grant this relief solely because appellant requested a parole ineligibility charge at his first trial. Further, I agree with the majority that the decision whether to give such a charge in future capital sentencing proceedings is governed by the amended version of S.C.Code Ann. § 16–3–20 (Supp.2001), effective May 28, 2002.