593 S.E.2d 456

Jerry B. McWEE, Petitioner,

v.

The STATE of South Carolina, Respondent.

No. 25780.

Supreme Court of South Carolina.

Heard Sept. 23, 2003.
Decided Jan. 27, 2004.
Rehearing Denied March 18, 2004.

John F. Hardaway and Melissa Jane Reed Kimbrough, both of Columbia, for Petitioner.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, and Assistant Deputy Attorney General Donald J. Zelenka, all of Columbia, for Respondent.

Justice BURNETT:

Petitioner, a death row inmate who has exhausted his state remedies, seeks a writ of habeas corpus contending the denial of his request for a parole eligibility charge at trial was "a violation, which, *in the setting*, constitutes a denial of fundamental fairness shocking to the universal sense of justice." *Butler v. State*, 302 S.C. 466, 468, 397 S.E.2d 87, 88 (1990) (emphasis in original) (internal citation omitted). We deny the writ.

## FACTS

Petitioner was convicted of murder and armed robbery and was sentenced to death. His direct appeal was affirmed. *State v. McWee*, 322 S.C. 387, 472 S.E.2d 235 (1996), *cert. denied* 519 U.S. 1061, 117 S.Ct. 695, 136 L.Ed.2d 618 (1997). His application for post-conviction relief was denied and this Court declined to issue a writ of certiorari to review that decision. Petitioner received no relief from the federal courts, *see McWee v. Weldon*, 283 F.3d 179 (4th Cir.), *cert. denied* 537 U.S. 893, 123 S.Ct. 162, 154 L.Ed.2d 158 (2002), and has now

filed this petition for a writ of habeas corpus in this Court's original jurisdiction. *See Butler v. State, supra.*

Petitioner's habeas petition involves the trial court's refusal to give a parole eligibility charge during the penalty phase of petitioner's capital trial. Prior to jury voir dire, petitioner's attorneys inquired whether the trial judge would instruct the jury that petitioner would be parole eligible after service of thirty years. The trial judge indicated he would give such a charge. At the beginning of the penalty phase, however, the trial judge stated he would not instruct the jury on petitioner's parole eligibility. Accordingly, during his initial charge in the penalty phase, the trial judge told the jury that the terms "life imprisonment" and "death penalty" were to be given their plain and ordinary meanings. After some deliberation, the jurors inquired whether a defendant who received a life sentence was required to serve a minimum number of years before becoming eligible for parole. The trial judge reiterated the "plain and ordinary meaning" charge. Petitioner again requested the jury be instructed as to his parole eligibility; the judge again denied the request.

On direct appeal, petitioner argued the trial judge's refusal to give the parole eligibility charge was a violation of his due process and Eighth Amendment rights. The Court held the issue was not properly preserved for review since petitioner failed to assert any constitutional basis for the charge at trial. *State v. McWee, supra.* Nevertheless, the Court addressed the merits of petitioner's claims, ruling that because petitioner was eligible for parole, his due process rights were not infringed.[1] In addition, the Court held petitioner's Eighth Amendment protections were not violated. Finally, the Court found that petitioner failed to demonstrate any fundamental unfairness as the result of the trial judge's ultimate decision not to give a parole eligibility charge.

---

1. The Court relied on cases holding that where a capital defendant is parole ineligible and his future dangerousness is at issue, due process requires a charge on parole ineligibility. *See Simmons v. South Carolina,* 512 U.S. 154, 114 S.Ct. 2187, 129 L.Ed.2d 133 (1994); *State v. Tucker,* 319 S.C. 425, 462 S.E.2d 263 (1995) *cert. denied* 516 U.S. 1080, 116 S.Ct. 789, 133 L.Ed.2d 739 (1996); *State v. Southerland,* 316 S.C. 377, 447 S.E.2d 862 (1994), *cert. denied* 513 U.S. 1166, 115 S.Ct. 1136, 130 L.Ed.2d 1096 (1995), *overruled on other grounds, State v. Chapman,* 317 S.C. 302, 454 S.E.2d 317 (1995).

## *ISSUE*

Does the denial of petitioner's request for a parole eligibility charge warrant the grant of a petition for a writ of habeas corpus?

## *ANALYSIS*

Habeas relief will be granted only for a constitutional claim rising to the level of "a violation, which in the setting, constitutes a denial of fundamental fairness shocking to the universal sense of justice." *Green v. Maynard*, 349 S.C. 535, 538, 564 S.E.2d 83, 84 (2002), *quoting Butler v. State, supra.* "[N]ot every intervening decision, nor every constitutional error at trial will justify issuance of the writ." *Id.* A writ of habeas corpus will only be granted under "unique and compelling circumstances." *Id.* Habeas corpus is available only when other remedies are inadequate or unavailable. *Gibson v. State*, 329 S.C. 37, 495 S.E.2d 426 (1998).

The Court has previously reviewed and denied petitioner's present claim. In his direct appeal, the Court determined petitioner's failure to receive a parole eligibility charge was neither a violation of due process nor the Eighth Amendment. *State v. McWee, supra.* The Fourth Circuit Court of Appeals concurred in its denial of petitioner's federal habeas application. *McWee v. Weldon, supra.* No controlling constitutional law has since been created holding otherwise. *See Shafer v. South Carolina*, 532 U.S. 36, 121 S.Ct. 1263, 149 L.Ed.2d 178 (2001) (whenever future dangerousness is at issue in capital sentencing proceeding under South Carolina's sentencing scheme, due process requires jury be informed that life sentence carries no possibility of parole). There is simply no constitutional requirement that a parole eligible defendant receive a parole eligibility instruction.

The current case is both factually and legally distinguishable from *Butler v. State, supra*, where habeas relief was granted. After Butler was tried, his direct appeal affirmed, and his application for post-conviction relief denied, the Court issued several decisions stating a defendant's Fifth Amendment rights are violated if the trial judge pressures a defendant into testifying. *See State v. Cooper*, 291 S.C. 332, 353 S.E.2d 441 (1986); *State v. Pierce*, 289 S.C. 430, 346 S.E.2d

707 (1986); *State v. Gunter,* 286 S.C. 556, 335 S.E.2d 542 (1985).

Subsequently, Butler filed a habeas petition on the basis the trial judge had coerced him into testifying.[2]   The Court noted Butler "seeks to take advantage of constitutional principles recognized after his trial, appeal, and exhaustion of state post-conviction relief proceedings." *Butler,* 302 S.C. at 468, 397 S.E.2d at 88.   The Court stated:

> We caution that not every intervening decision, nor every constitutional error at trial will justify issuance of the writ. Rather, the writ will issue only under circumstances where there has been a "violation, which, *in the setting,* constitutes a denial of fundamental fairness shocking to the universal sense of justice."   Although we do not condone the delay in calling this grave constitutional error to our attention, under the unique and compelling circumstances of this case we grant petitioner relief.

*Id.* (italic in original) (internal citation omitted).

The Court granted Butler extraordinary relief.   It emphasized the trial judge was unaware Butler was mentally retarded and it expressed concern that Butler may not have understood the trial proceedings.

Furthermore, this case is dissimilar to *Tucker v. Catoe,* 346 S.C. 483, 552 S.E.2d 712 (2001), in which the Court granted habeas relief to an applicant after concluding his due process rights were violated by an unduly coercive *Allen*[3] charge.   The Court found it was the combination of the constitutional violation *and* other circumstances which compelled it to conclude the applicant had been denied fundamental fairness shocking to the universal sense of justice.

Petitioner notes that, despite the trial judge's "plain and ordinary meaning" charge during the initial penalty phase instructions, the jury returned with a parole eligibility question.   Petitioner suggests that, after his appeal was decided, we created new law holding it is misconduct for a jury to fail to "rely solely upon the court's instructions for the law." *State v. Harris,* 340 S.C. 59, 63, 530 S.E.2d 626, 627 (2000).

---

**2.**  At some point, Butler's federal reviews were exhausted.

**3.**  *Allen v. United States,* 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896).

It has always been the law that the jury must confine its consideration to the law as given by the trial judge. S.C. Const. art. V, § 21 (the judge shall declare the law).[4] On direct appeal, petitioner could have readily challenged the jury's misconduct in considering matters contrary to the trial judge's instruction, but he did not do so. Accordingly, the misconduct by petitioner's jury does not "in the setting"—petitioner's trial and its reviews—constitute a violation shocking to the universal sense of justice.

Put simply, failure to charge the jury that petitioner was parole eligible is not shocking to the universal sense of justice. Clearly, petitioner's constitutional rights were not violated by the trial judge's refusal to give a parole eligibility charge; moreover, there have been no intervening circumstances by way of new law, after-discovered evidence, or any other alleged fact, which, in the setting, warrants the issuance of a writ of habeas corpus.[5] We deny the petition.

**WRIT DENIED.**

TOAL, C.J., and WALLER, J., concur. PLEICONES, J., dissenting in a separate opinion in which Acting Justice G. THOMAS COOPER, JR., concurs.

Justice PLEICONES:

I respectfully dissent. In my opinion, the denial of petitioner's request for a parole eligibility charge at his capital trial

---

**4.** *See also* standard language which appears in jury charges ("As the presiding judge, I am the sole judge of the law of this case, and it is your duty as jurors to accept and apply the law as I now state it to you. If you already have any idea as to what the law is or what the law ought to be and it does not agree with what I now tell you the law is, you must abandon this idea because you are sworn to accept the law and apply the law exactly as I state it to you.").

**5.** Approximately eight years after petitioner's trial, the General Assembly amended the capital sentencing statute to provide that the trial judge must charge the applicable parole eligibility statute when requested by the defendant. S.C.Code Ann. § 16–3–20 (Supp.2002). The amendment, generated after years of legal debate concerning the relevance of parole *in* eligibility, does not, under the circumstances presented here, constitute a denial of fundamental fairness shocking to the universal sense of justice.

was "a violation, which, *in the setting*, constitutes a denial of fundamental fairness shocking to the universal sense of justice." *Butler v. State*, 302 S.C. 466, 468, 397 S.E.2d 87, 88 (1990) (emphasis in original) (internal citation omitted). Accordingly, I would grant the writ of habeas corpus and remand the matter to Aiken County for a new sentencing proceeding.

## FACTS

Prior to *voir dire*, petitioner's attorneys asked the trial judge whether he would charge the jury that, were it to find an aggravating circumstance yet recommend a life sentence, petitioner would be required to serve thirty years before becoming eligible for parole.[6] Had petitioner received a life sentence, he would have been seventy-one years old when he first became parole-eligible. Although the trial judge indicated he would give such a charge and the solicitor at one point agreed, the trial judge subsequently informed the parties, prior to the commencement of the penalty phase, that no such charge would, in fact, be given.

The trial judge also denied petitioner's attorneys' request to *voir dire* potential jurors regarding their views of parole eligibility for murderers who do not receive a death sentence. Despite the lack of any inquiry, the record reflects that fourteen of the thirty-nine jurors *voir dired* raised the issue of parole eligibility themselves: five of these fourteen individuals were seated on petitioner's jury.

During his initial charge in the penalty phase, the trial judge told the jury that the terms 'life imprisonment' and 'death penalty' were to be given their plain and ordinary meanings. Despite this charge, the jurors returned approximately two minutes after beginning their deliberations asking whether a defendant who received a life sentence was required to serve a minimum number of years before becoming eligible

---

6. At the time of his capital trial, petitioner would have been parole eligible after serving thirty years had his sentencing jury found an aggravating circumstance, but returned a life sentence. Following this trial, however, petitioner pled guilty to a second murder and received a thirty-year sentence. This second conviction for a violent offense renders petitioner parole ineligible. *See* S.C.Code Ann. § 24–21–640 (Supp.2002). As the result of this second plea, petitioner will not be eligible for parole if his resentencing jury returns a life sentence. *Id.*

for parole. The trial judge reiterated the 'plain and ordinary meaning' charge. Petitioner's attorneys again asked that the thirty-year parole eligibility charge be given, and the judge again declined.

On direct appeal, petitioner argued the trial judge's refusal to give the parole eligibility charge was a violation of petitioner's Due Process and Eighth Amendment rights. The Court held the issue was not properly preserved for review since petitioner failed to assert any constitutional basis for the charge at trial. *State v. McWee*, *supra*. Despite this issue preservation bar, the majority opined that petitioner's Due Process rights were not violated since he was not entitled to the charge because petitioner was, in fact, parole eligible.

## ANALYSIS

The extraordinary relief afforded by *Butler* habeas corpus is available "to those who have, for whatever reason, been utterly failed by our criminal justice system." *State v. Torrence*, 305 S.C. 45, 406 S.E.2d 315 (1991). While "not every intervening decision, nor every constitutional error at trial will justify issuance of the writ," it will issue "where there has been a violation which, *in the setting*, constitutes a denial of fundamental fairness shocking to the universal sense of justice." *Butler v. State*, *supra*.

In this case, petitioner relies on the particular events that occurred at his trial and on the evolution of the law regarding parole eligibility charges to argue that his sentencing proceeding was, in hindsight, fundamentally unfair. Since this is a capital case, the Court must be especially concerned with the reliability of the jury's sentencing decision. As we recognized when granting another capital inmate resentencing upon a *Butler* petition, the United States Supreme Court has held "the qualitative difference between death and other penalties calls for a greater degree of reliability when the death sentence is imposed." *Tucker v. Catoe*, 346 S.C. 483, 552 S.E.2d 712 (2001) citing *Lowenfield v. Phelps*, 484 U.S. 231, 108 S.Ct. 546, 98 L.Ed.2d 568 (1988) (internal citations omitted).

Petitioner points to the fact that a number of jurors, *sua sponte*, raised the issue of parole eligibility during *voir dire*. He also notes that, despite the trial judge's prophylactic 'plain

and ordinary meaning' charge during the initial sentencing phase instructions, the jury returned almost immediately with a parole eligibility question. Thus, the record establishes that petitioner's jurors began their sentencing deliberations with a discussion of parole eligibility despite being instructed that it was not to be a factor in their decision.

The majority holds that this Court already considered petitioner's present claim, and denied it on direct appeal. They characterize petitioner's claim as a "constitutional requirement that a parole eligible defendant receive a parole eligibility instruction." I agree that this was the Due Process claim the Court considered and rejected on direct appeal, and I agree that petitioner had no constitutional entitlement to such a charge. I believe petitioner's current claim is different: Whether the denial of petitioner's jury charge request denied him the fundamental fairness guaranteed by the Due Process Clause? I would hold that it did.

The majority goes on to hold that petitioner's claim is both factually and legally distinguishable from *Butler v. State*. I find the differences unremarkable.

In *Butler*, the Court granted relief in part, because, after Butler's direct appeal had been decided, the Court issued several opinions holding that a defendant's Fifth Amendment rights were violated when the trial judge coerced the defendant's decision whether to testify. *Butler v. State, supra.* Here, after petitioner's direct appeal had been decided, this Court explicitly held that it was misconduct for a juror to fail to "rely solely upon the Court's instructions for the law." *State v. Harris,* 340 S.C. 59, 530 S.E.2d 626 (2000).

The majority discounts the impact of the intervening *Harris* decision on petitioner's claim, noting that "it has always been the law that a jury must confine its consideration to the law as given by the trial judge." The majority finds further support for this long-standing truth in our standard jury charge. Thus, the majority distinguishes the facts upon which Horace Butler received relief from those upon which petitioner bases his claim.

That a defendant could not, consistent with the State or Federal constitutions, be coerced in deciding whether to testify at his criminal trial was well settled before Butler was tried.

U.S. Const. amend. V; S.C. Const. art. I, § 12; *e.g.*, *State v. Gilbert*, 273 S.C. 690, 258 S.E.2d 890 (1979). In addition, the standard jury instruction, charged to Butler's jury, has since at least 1892 included language that no adverse inference may be drawn from a criminal defendant's failure to testify. *State v. Howard*, 35 S.C. 197, 14 S.E. 481 (1892).

In my opinion, if this standard jury charge language did not negate the error in Butler's trial, then the standard jury instruction given in petitioner's trial that 'the jury is to follow the law' does not vitiate petitioner's claim. While it is speculative to assume that Butler's jury disregarded this charge, there can be no doubt that petitioner's jury disregarded its instructions. Further, while I recognize that the intervening jury misconduct decision in *State v. Harris*, *supra*, did not represent a change in our law, neither did the intervening decisions upon which the Court relied in granting Butler relief. Rather, in Butler's case and in petitioner's case, the Court's intervening decisions identified particular acts as a violative of long-standing principles of constitutional law. Finally, it is somewhat misleading for the majority to suggest that petitioner should, or could, have readily challenged the jury's misconduct on direct appeal. His attorneys lodged no such specific objection to the jury's action, and thus no 'misconduct' claim was preserved for that appeal.[7] *E.g.*, *State v. Dunbar*, 356 S.C. 138, 587 S.E.2d 691 (2003) (issue must be raised and ruled upon to be preserved for direct appeal).

In addition to these 'unique and compelling circumstances,'[8] petitioner also relies upon the General Assembly's amendment of the death penalty statute. S.C.Code Ann. § 16–3–20 (Supp. 2002). The amended statute provides that capital defendants are entitled to have their juries charged on parole eligibility or ineligibility. Trial judges must charge parole ineligibility when requested by either the defendant or the State. § 16–3–

---

7. I say this not to fault petitioner's trial attorneys. When the jury returned with their parole eligibility question almost immediately after beginning deliberations, the attorneys used this question as the basis for (yet again) seeking a parole charge.

8. Petitioner's repeated requests for a parole eligibility charge; a trial jury, with an overt interest in this issue, unable to accept the judge's instructions not to consider it; and our intervening juror misconduct decision.

20(A). Further, the statute now provides that "In cases where the defendant is eligible for parole, the judge must charge the applicable parole eligibility statute." *Id.* As petitioner correctly points out, only individuals who committed a murder before 1995 could be parole eligible.[9] Petitioner contends that this provision in the amended statute establishes that the legislature intended a parole eligibility charge be given in cases where a pre–1996 capital murderer is granted a resentencing after the amendment's effective date. *See also State v. Shafer,* 352 S.C. 191, 573 S.E.2d 796 (2002) (Court indicated § 16–3–20 is to be given 'retroactive' effect). Upon retrial, petitioner has the absolute right pursuant to § 16–3–20(A) to request that his sentencing jury be given accurate parole information.

## CONCLUSION

A *Butler* habeas corpus petition requires that this Court review the merits of the petitioner's claim "in [its] setting." While *Butler* relief is not confined to those inmates under a sentence of death, the Court must continue to be mindful when reviewing a claim that a capital sentencing proceeding was 'fundamentally unfair' of the qualitative differences between a death sentence and other criminal punishments, and of the greater degree of reliability the Constitution requires before this sentence may be imposed. *Lowenfield v. Phelps, supra; Tucker v. Catoe, supra.* I do not suggest that the Court should relax the *Butler* requirement that "the universal sense of justice" be shocked before the writ will issue, but merely to emphasize that the setting of this petitioner's claim is a capital sentencing proceeding.

In addition to this setting, petitioner's case involves incontrovertible evidence of what we now know to be 'juror misconduct': the jury's injection of parole eligibility into its deliberations in the face of a prophylactic 'plain and ordinary meaning' charge. Further, the General Assembly has now declared that all capital sentencing juries shall, upon request, be

---

9. 1995 Act No. 83 (possible sentences for murder are death, life without the possibility of parole, or thirty year mandatory minimum, also without the possibility of parole).

charged accurate parole eligibility information. Petitioner has been unrelenting in seeking just such a charge.

On direct appeal, the Court rejected petitioner's Due Process claim because he was not entitled under that constitutional provision to the jury charge he sought. The question we are asked to decide now is different: Whether the denial of petitioner's jury charge request was, in the setting, fundamentally unfair. Because of "the unique and compelling circumstances of this case," I would grant the petition for a writ of habeas corpus. To do otherwise would result in an 'utter failure of our criminal justice system,' which provides for a *Butler* petition in order to permit this Court a final opportunity to review the fundamental fairness of a criminal proceeding.

I respectfully dissent.

Acting Justice G. THOMAS COOPER, JR., concurs.