627 S.E.2d 726

**The STATE, Respondent,**

v.

**Michael James LANEY, Appellant.**

**No. 26123.**

Supreme Court of South Carolina.

Heard Jan. 5, 2006.

Decided March 6, 2006.

Rehearing Denied April 6, 2006.

Assistant Appellate Defender Robert M. Dudek, of Columbia, for Appellant.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Donald J. Zelenka, Assistant Attorney General Melody J. Brown, all of Columbia; and Robert M. Ariail, of Greenville, for Respondent.

Justice BURNETT:

Michael James Laney (Appellant) was charged with two counts of murder; two counts of possession of a weapon during the commission of or attempted commission of a violent crime; arson to a dwelling; criminal sexual conduct, first degree; and kidnapping. He was found guilty on all counts and sentenced to death. We reverse and remand for a new sentencing proceeding.

### FACTUAL/PROCEDURAL BACKGROUND

On September 25, 2000, Dorothy Hancock and Thelma Godfrey were murdered in Hancock's home in Greenville County. The victims were neighbors and both in their eighties. Around 9:15 p.m. that night, John Gillard, another neighbor, heard a loud noise. Upon investigation, he saw smoke coming from Hancock's house and observed Hancock's garage door had been smashed and her car was missing. He entered the garage and saw Hancock's body on the floor. Gillard's wife reported the incident to 911. Responding to the call, a firefighter found Godfrey's body in a bedroom; her body was tied to a chair with a telephone cord and was covered with tape, a sheet, and a cloth.

Dr. Michael Ward, the Greenville County Medical Examiner, performed autopsies on both victims and testified as an expert in forensic pathology. He testified Hancock had several broken ribs, a broken sternum, and had been sexually assaulted. He testified Hancock received three stab wounds including a fatal stab cutting her throat from side to side. Hancock's cause of death was multiple blunt and sharp forced injuries.

Ward testified Godfrey had stab and incise wounds to the neck which included a cut trachea. He determined the incise wounds caused Godfrey's death.

David Tafaoa of the South Carolina Law Enforcement Division (SLED) testified as an expert in arson investigation. He opined the fire in Hancock's house was intentionally set by someone pouring an ignitable liquid in four different areas of the house. Alex Layton of SLED testified several swatches of carpet from Hancock's house tested positive for the accelerant gasoline.

On September 26, 2000, Appellant was arrested in North Carolina as a suspect in the double homicide. Officers testified the coveralls Appellant was wearing at the time of his arrest smelled of gasoline. Hancock's blood was found on the coveralls and on Appellant's underwear. Appellant's blood was under Hancock's fingernails and his semen was on her body. Appellant's fingerprints were on a phone base and an end section of cut tape collected from under the bedspread in the room where Godfrey was found.

During the sentencing phase of his trial, Appellant presented mitigating evidence regarding his mental ability and health. Two doctors testified Appellant was not mentally retarded but had mental illnesses. Another doctor testified Appellant's IQ was between borderline intellectual functioning and mild mental retardation. The State sought the death penalty based on the following statutory aggravating circumstances: (1) the murder was committed while in the commission of a criminal sexual conduct in the first degree; (2) the murder was committed while in the commission of a kidnapping; and (3) two or more persons were murdered by Appellant by one act or pursuant to one scheme or course of conduct.

As part of the jury charges during the sentencing proceeding, the trial judge charged the jury to consider the above-referenced statutory aggravating circumstances and the following statutory mitigating circumstances: (1) whether Appellant was under the influence of a mental or emotional disturbance; (2) whether Appellant was mentally retarded; (3) whether Appellant's capacity to appreciate the criminality of his conduct or to conform his conduct to the law was substantially impaired; and (4) Appellant's age or mentality. S.C.Code Ann. § 16–3–20(C)(a) & (b) (2003 & Supp.2004). After finding Appellant guilty as charged, a jury recommended the death penalty. Appellant was sentenced to death for each of the murders, thirty years imprisonment for criminal sexual conduct, and twenty years imprisonment for arson, to be served consecutively. Appellant was not sentenced for the kidnapping and weapon convictions. S.C.Code Ann. §§ 16–3–910 & 16–23–490 (2003). This appeal follows and Appellant seeks a new sentencing proceeding.

## ISSUES

I. Did the trial court err by not charging the jury that a life imprisonment sentence meant life without parole because the State offered evidence of Appellant's future dangerousness?

II. Do the cases of *Atkins v. Virginia* and *Ring v. Arizona*, decided by the United States Supreme Court after Appellant's trial, require Appellant's case to be remanded for a new sentencing proceeding before a jury?

III. Did the trial court lack subject matter jurisdiction to sentence Appellant to death because the murder indictments did not identify any statutory aggravating circumstances necessary to expose Appellant to a punishment of death?

## STANDARD OF REVIEW

In criminal cases, this Court sits to review errors of law only and is bound by factual findings of the trial court unless an abuse of discretion is shown. *State v. Wilson*, 345 S.C. 1, 5, 545 S.E.2d 827, 829 (2001). An abuse of discretion

occurs when the conclusions of the trial court either lack evidentiary support or are controlled by an error of law. *State v. McDonald,* 343 S.C. 319, 325, 540 S.E.2d 464, 467 (2000).

## *LAW/ANALYSIS*

### I. Jury Charge

■ Appellant argues the trial judge erred by failing to charge the jury that a life imprisonment sentence meant life without parole. We agree.

Appellant contends a jury charge that life imprisonment meant life without parole was required under *Simmons v. South Carolina,* 512 U.S. 154, 114 S.Ct. 2187, 129 L.Ed.2d 133 (1994); *Shafer v. South Carolina,* 532 U.S. 36, 121 S.Ct. 1263, 149 L.Ed.2d 178 (2001); and *Kelly v. South Carolina,* 534 U.S. 246, 122 S.Ct. 726, 151 L.Ed.2d 670 (2002), because the State offered evidence of Appellant's future dangerousness. The State concedes it submitted evidence supporting Appellant's future dangerousness during the sentencing phase of the trial.[1] The State further concedes due process required Appellant be given an opportunity to inform the jury of parole ineligibility, but contends the issue is procedurally barred from review. In the alternative, the State argues due process was not violated because Appellant's counsel told the jury that life imprisonment meant life without parole.

After reviewing the entire record, we find the issue sufficiently preserved for review on appeal. Further we find it unnecessary to address the State's due process argument to resolve this issue.

In *Shafer* and *Kelly,* the United States Supreme Court held that where a defendant's future dangerousness is at issue in a capital sentencing proceeding, and the only sentencing alter-

---

1. The State concedes the following evidence was submitted to support Appellant's future dangerousness: (1) detention officers forcibly restrained Appellant after a struggle with him; (2) Appellant threatened to kill a detention officer and blow up his house; and (3) detention official testified Appellant had dug around the vents and walls in his cell. *See, e.g., Kelly,* 534 U.S. at 253, 122 S.Ct. at 731 ("evidence of violent behavior in prison can raise a strong implication of 'generalized ... future dangerousness' ").

native to death available to the jury is life imprisonment without parole, due process entitles the defendant to inform the jury of his parole ineligibility.[2] The *Kelly* Court specifically noted counsel's arguments in *Shafer* that the defendant "would die in prison" or would "spend his natural life there" and the trial judge's instructions that "life imprisonment means until the death of the defendant" were insufficient to convey a clear understanding to the jury of Shafer's parole ineligibility. 534 U.S. at 257, 122 S.Ct. at 733–34; *see also State v. Stone*, 350 S.C. 442, 567 S.E.2d 244 (2002) (reversing and remanding for a new sentencing proceeding where the State submitted evidence of Stone's future dangerousness but trial court failed to instruct jury after request by defense counsel that Stone would be ineligible for parole if sentenced to life imprisonment and finding statements by counsel and the court to the jury that Stone would spend the rest of his life in prison did not convey to the jury that Stone would be ineligible for parole as required by *Kelly*).

In *State v. Shafer*, 352 S.C. 191, 202, 573 S.E.2d 796, 801–02 (2002), we stated, "given the United States Supreme Court's decision in *Kelly*, the better practice is for trial judges to give the capital sentencing jury a parole eligibility charge whether it is requested or not."[3] Today we conclude where a defendant's future dangerousness is at issue in a capital sentencing proceeding, and the only sentencing alternative to death available to the jury is life imprisonment without parole, the trial judge *shall* charge the jury, whether requested or not, that life imprisonment means until the death of the defendant without the possibility of parole. The trial judge erred in failing to charge the jury that life imprisonment meant until the death of Appellant without the possibility of parole be-

---

**2.** *See also Simmons*, 512 U.S. at 178, 114 S.Ct. at 2201 (under South Carolina's capital sentencing scheme prior to January 1, 1996, due process entitled the defendant to inform the jury of his parole ineligibility where a defendant's future dangerousness was at issue).

**3.** Under current statutory law, when requested by the State or the defendant, the judge must charge the jury that life imprisonment means until the death of the defendant without the possibility of parole. S.C.Code Ann. § 16–3–20(A) (2003 & Supp.2004) (effective May 28, 2002).

cause the State placed Appellant's future dangerousness in issue during the capital sentencing proceeding.

## II. New Sentencing Proceeding under *Atkins v. Virginia* and *Ring v. Arizona*

█ Appellant argues the intervening cases of *Atkins v. Virginia*, 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002), and *Ring v. Arizona*, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), require his case be remanded for a new sentencing proceeding. We disagree.

Appellant's trial began on October 8, 2001, and he was sentenced to death on October 19, 2001. The United States Supreme Court issued its decision in *Atkins* on June 20, 2002, which held the execution of a mentally retarded person is cruel and unusual punishment prohibited by the Eighth Amendment of the United States Constitution. The Supreme Court left to the states the task of developing methods to enforce this constitutional restriction upon the execution of sentences. In *Ring*, issued on June 24, 2002, the United States Supreme Court held an Arizona statute, which allowed the trial judge to determine the presence or absence of the aggravating factors required by Arizona law for the imposition of the death penalty, violated the Sixth Amendment right to a jury trial in capital prosecutions.

We issued *Franklin v. Maynard*, 356 S.C. 276, 588 S.E.2d 604 (2003), on November 3, 2003. In *Franklin*, we addressed the following issues: (1) the definition of mental retardation; (2) the procedure for making the mental retardation determination in post-*Atkins* cases; and (3) the procedure for making the mental retardation determination in cases where the defendant was sentenced to death prior to *Atkins*. For the definition of mental retardation, we referred to the definition established by the legislature in S.C.Code Ann. 16–3–20(C)(b)(10). Under § 16–3–20(C)(b)(10) mental retardation is a statutory mitigating circumstance and is defined as: "significantly subaverage general intellectual functioning existing concurrently with deficits in adaptive behavior and manifested during the developmental period."

In *Franklin*, we concluded that in post-*Atkins* cases the mental retardation determination is a two-step process. First,

the trial judge shall make the mental retardation determination in a pretrial hearing, if so requested by the defendant or the prosecution, after hearing evidence, including expert testimony, from both the defendant and the State. The defendant shall have the burden of proving his mental retardation by a preponderance of the evidence. If, in the pretrial hearing, the trial judge concludes, by a preponderance of the evidence, the defendant to be mentally retarded, the defendant will not be eligible for the death penalty. If, however, the trial judge concludes the defendant is not mentally retarded and the jury finds the defendant guilty of the capital charge, the defendant is not precluded from presenting mitigating evidence of mental retardation existing at the time of the crime. *See* S.C.Code Ann. § 16–3–20(C)(b)(10). If the jury finds this mitigating circumstance, then a death sentence may not be imposed due to the mandate of *Atkins.*[4] *Franklin,* 356 S.C. at 278–79, 588 S.E.2d at 605.

Also in *Franklin,* we found where the defendant was sentenced to death prior to *Atkins,* statutory procedures were already in place. Under S.C.Code Ann. §§ 17–27–20(a) and –160 (2003), a death row inmate who claims he is mentally retarded and, as a result, not subject to the death penalty, may institute post-conviction relief (PCR) proceedings because his sentence is in violation of the Constitution and exceeds the maximum authorized by law. The PCR applicant must show, by a preponderance of the evidence, he is mentally retarded, and if mental retardation is proven, the PCR court will vacate the death sentence and impose a life sentence.

Appellant argues this Court should modify the procedure set forth in *Franklin* for post-*Atkins* cases because mental retardation is a factual issue which must be determined prior to imposing the death penalty, similar to an aggravating circumstance, and under *Ring* that fact must be found by a jury. In *Ring,* the Supreme Court stated that "[c]apital defendants ... are entitled to a jury determination of any fact *on which the legislature conditions an increase in their*

---

4. The constitutionality of the designation of mental retardation in Section 16–3–20(C)(b)(10) as merely a mitigating circumstance in light of *Atkins* is not before us and we express no opinion on that issue. What constitutes a mitigating circumstance is a matter for the Legislature.

*maximum punishment.*" 536 U.S. at 589, 122 S.Ct. at 2432 (emphasis added). The Supreme Court noted that "[i]f a State makes an increase in a defendant's authorized punishment contingent on the finding of a fact, that fact . . . must be found by a jury beyond a reasonable doubt." *Id.* at 602, 122 S.Ct. at 2439; *see also Apprendi v. New Jersey,* 530 U.S. 466, 490, 120 S.Ct. 2348, 2362–63, 147 L.Ed.2d 435 (2000) ("Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.").

Appellant has confused the issues of eligibility for the death penalty and a fact on which the legislature conditions an increase in a defendant's maximum punishment. The General Assembly has not conditioned an increase in a defendant's maximum punishment on the fact the defendant is *not* mentally retarded. The fact a defendant is not mentally retarded is not an aggravating circumstance that increases a defendant's punishment; rather, the issue is one of eligibility for the sentence imposed by a jury. *See People v. Smith,* 193 Misc.2d 462, 751 N.Y.S.2d 356 (N.Y.Sup.Ct.2002) (rejecting argument prosecution is required by *Atkins* and *Ring* to affirmatively prove defendant is not mentally retarded at sentencing phase of capital murder trial); *State v. Williams,* 831 So.2d 835, 860 n. 35 (La.2002) ("The Supreme Court would unquestionably look askance at a suggestion that in *Atkins* it had acted as a super legislature imposing on all of the states with capital punishment the requirement that they prove as an aggravating circumstance that the defendant has normal intelligence and adaptive function. *Atkins* explicitly addressed mental retardation as an exemption from capital punishment, not as a fact the *absence* of which operates 'as the functional equivalent of an element of a greater offense.' "); *Head v. Hill,* 277 Ga. 255, 587 S.E.2d 613, 620 (2003) ("[T]he absence of mental retardation is not the functional equivalent of an element of an offense such that determining its absence or presence requires a jury trial under *Ring.*"); *Howell v. State,* 151 S.W.3d 450, 464–65 (Tenn.2004) (absence of mental retardation not an element of the offense and not required to be proven by the

State nor found by a jury).[5]

Prior to and during Appellant's trial, mental retardation was a mitigating circumstance. In *Atkins*, the Supreme Court determined that mental retardation should be considered apart from mitigating circumstances. We conclude in post-*Atkins* cases, mental retardation is a threshold issue, decided by the trial judge as a matter of law in a pretrial hearing, that determines whether a defendant is eligible for capital punishment at all, and if not found as a threshold issue, mental retardation continues to be a mitigating circumstance under statutory law.

### III. Subject Matter Jurisdiction

■ Appellant contends the circuit court lacked subject matter jurisdiction to sentence him to death because the indictments for murder did not allege any aggravating circumstance which exposed him to the death penalty. Appellant asserts the Sixth Amendment of United States Constitution; *Ring; Apprendi; and Jones v. United States*, 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999), require indictments in state capital murder cases to allege aggravating circumstances. We disagree.

■ Subject matter jurisdiction is the power of a court to hear and determine cases of the general class to which the proceedings in question belong. *State v. Gentry*, 363 S.C. 93, 100, 610 S.E.2d 494, 498 (2005). Issues related to subject matter jurisdiction may be raised at any time. The indictment is a notice document, and a challenge to the indictment on the

---

**5.** In *Schriro v. Smith*, —— U.S. ——, 126 S.Ct. 7, 163 L.Ed.2d 6, 2005 WL 2614879 (2005), the United States Supreme Court held the Ninth Circuit Court of Appeals exceeded its limited authority on habeas review by commanding Arizona courts to conduct a jury trial to resolve a habeas petitioner's mental retardation claim. The Supreme Court found the "Ninth Circuit erred in commanding the Arizona courts to conduct a jury trial to resolve Smith's mental retardation claim." *Id.* 126 S.Ct. at 9. The Court further stated, "States, including Arizona, have responded to [*Atkins*] by adopting their own measures for adjudicating claims of mental retardation. While those measures might, in their application, be subject to constitutional challenge, Arizona had not even had a chance to apply its chosen procedures when the Ninth Circuit preemptively imposed its jury trial condition." *Id. Schriro* is not dispositive of Appellant's issue.

ground of insufficiency must be made before the jury is sworn. *Id.* at 102, 610 S.E.2d at 500.

We note the State, as required by statute, timely notified Appellant of its intention to seek the death penalty and identified the aggravating circumstances and related evidence the State intended to use at trial. *See* S.C.Code Ann. 16–3–20(B) and 16–3–26 (2003 Supp.2004) (Notice of intention to seek the death penalty must be given at least thirty days prior to trial.).

This Court has recently addressed the issue of whether aggravating circumstances are elements of the offense of murder. In *State v. Downs,* 361 S.C. 141, 147–48, 604 S.E.2d 377, 380–81 (2004), this Court stated:

The [Supreme] Court expressly noted in both *Apprendi* and *Ring* that the cases did not involve challenges to state indictments.... More important, the Fourteenth Amendment has not been construed to incorporate the Fifth Amendment's Presentment or Indictment Clause.... State law governs indictments for state-law crimes. Under South Carolina law, aggravating circumstances need not be alleged in an indictment for murder. S.C.Code Ann. § 17–19–30 (2003).... The aggravating circumstances listed in S.C.Code Ann. § 16–3–20(C)(a) (2003) are sentencing factors, not elements of murder.

(internal citations omitted). *See also State v. Crisp,* 362 S.C. 412, 419–20, 608 S.E.2d 429, 433–34 (2005) (under South Carolina law, aggravating circumstances need not be alleged in murder indictment); *State v. Wood,* 362 S.C. 135, 144, 607 S.E.2d 57, 61 (2004), *cert. denied,* —— U.S. ——, 125 S.Ct. 2942, 162 L.Ed.2d 873 (2005) (same). Accordingly, the trial court had subject matter jurisdiction in Appellant's case.

## CONCLUSION

Based on the above reasoning, we reverse Appellant's death sentence and remand this matter to the circuit court for a new sentencing proceeding consistent with this opinion.

**REVERSED AND REMANDED.**

TOAL, C.J., MOORE, J., and Acting Justice RALPH KING ANDERSON, JR., concur.

PLEICONES, J., concurring in a separate opinion.

Justice PLEICONES, concurring:

I concur, but write separately, because while I agree that the circuit court had subject-matter jurisdiction, and while I further agree that Appellant is entitled to a new sentencing proceeding because of the erroneous jury charge, I would not reach the issue of entitlement to a new sentencing under *Atkins v. Virginia*, 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002). I nonetheless wish to elucidate my understanding of *Franklin v. Maynard*, 356 S.C. 276, 588 S.E.2d 604 (2003), to the extent that it differs from that expressed by the majority.

As the majority observes, if on remand Appellant argues that he was mentally retarded at the time of the crime, then the circuit court will be required to follow the procedure set forth in *Franklin* for determining mental retardation in post-*Atkins* cases.[1] The judge will determine whether Appellant is mentally retarded as a preliminary matter. If the judge determines that Appellant is mentally retarded, then Appellant cannot be sentenced to death. If the judge determines that Appellant is not mentally retarded, then the issue will remain for the jury after the parties present their cases. If the jury determines, in the first instance, that Appellant is mentally retarded, then the death penalty cannot be imposed. *Franklin*, 356 S.C. at 279, 588 S.E.2d at 606. If the jury determines that Appellant is not mentally retarded, then it will proceed as in any death-penalty case, determining whether aggravating and/or mitigating circumstances exist, and if aggravating circumstances are found, whether to recommend death. *See* S.C.Code Ann. § 16–3–20 (2003).

My understanding of *Franklin* is the jury, post-*Atkins*, does not consider mental retardation as a "mitigating circum-

---

1. While Appellant's first sentencing was pre-*Atkins*, his new sentencing will be post-*Atkins*.

stance." *See Franklin,* 356 S.C. at 279, 588 S.E.2d at 606 (holding that "[i]f the jury finds this *mitigating circumstance* [mental retardation], then a death sentence will not be imposed") (emphasis added). Technically, the jury's consideration of mental retardation is a threshold matter, as is the trial judge's consideration of the issue. If the jury finds that the defendant is mentally retarded, then the jury's role ends. It does not then consider aggravating and mitigating circumstances, for it has effectively determined that the state cannot seek the death penalty. *See* § 16-3-20(B). In such a case, the judge must determine whether the defendant should be sentenced to life imprisonment or to a thirty-year-minimum term. *See* § 16-3-20(A).

Only when the jury determines that the defendant is not mentally retarded does it consider aggravating and mitigating circumstances. Then, the jury must consider the state of the defendant's *mental health* and determine whether it constitutes a "mitigating circumstance." *See* § 16-3-20(C)(b)(2), (6), and (7). Logically, however, the jury cannot consider the defendant's *mental retardation* as a mitigating circumstance under section 16-3-20(C)(b)(10), since, as explained above, if the jury believes that the defendant is *mentally retarded,* then the jury never even reaches issues of aggravation and mitigation.

In sum, I concur in the majority opinion in all substantive respects. I disagree only with the use of the term "mitigating circumstance" with respect to a jury's determination in a post-*Atkins* case whether the defendant is mentally retarded.