THOMAS, Circuit Judge,
dissenting:
The question before us on remand is “what effect the error had or reasonably may be taken to have had upon the jury’s decision.” McKinney v. Rees, 993 F.2d 1378, 1385-86 (9th Cir.1993). Unlike the majority, I cannot confidently conclude that the error did not have a “substantial and injurious effect.” See Brecht v. Abrahamson, 507 U.S. 619, 623, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993). Accordingly, I respectfully dissent.
We can rarely say with certainty what effect an error had on a jury’s verdict. But here we have the luxury of some certainties. Because the jury hung on the issue of whether Pulido used a gun, we know the jury did not unanimously accept the prosecution’s primary theory of the case, which was that Pulido was the shooter. Therefore, we also know that at least some jurors voted to convict on an aiding- and-abetting theory. And it is undisputed that erroneous state court jury instructions permitted the jury to find Pulido guilty of felony murder on the invalid theory that he formed the intent to aid and abet the underlying felony only after the murder. Indeed, the State concedes both that the state court committed constitutional error in its jury instruction and that the jury found felony murder improperly. Viewing the record as a whole, the undisputed constitutional error was not harmless under Brecht. See Hedgpeth v. Pulido, 555 U.S. 57, 129 S.Ct. 530, 536-37, 172 L.Ed.2d 388 (2008) (Stevens, Souter, & Ginsburg, JJ., dissenting).
I
A
The trial court’s instructions regarding special circumstances did not render the errors in the felony murder instructions non-prejudicial, as they still permitted the jury to find the special circumstance based solely on the theory that Pulido aided and abetted the robbery as a major participant and with reckless indifference to human life. The jury might have found that Pulido was a major participant and acted with reckless indifference based solely on his post-shooting actions.
The Supreme Court has instructed us that a “ ‘single instruction to the jury may not be judged in artificial isolation but must be viewed in the context of the overall charge.’ ” See Middleton v. McNeil, 541 U.S. 433, 437, 124 S.Ct. 1830, 158 L.Ed.2d 701 (2004) (quoting Boyde v. California, 494 U.S. 370, 378, 110 S.Ct. 1190, 108 L.Ed.2d 316 (1990)). But, contrary to the majority’s assessment, the constitutionally flawed murder instruction infected other instructions that otherwise would probably have been clear. That infection permitted the jury to make the logical progression from a finding of post-shooting aiding and abetting to a finding of post-shooting murder liability to a finding of post-shooting robbery felony-murder special circumstance.
The trial court specifically instructed the jury that aider-and-abettor liability for robbery “continues so long as the stolen property is being carried away to a place of temporary safety.” CALJIC 9.40.1. Everyone agrees the district court did not instruct the jury that this definition of aider-and-abettor liability attaches only to the robbery count, and that the relevant assistance for felony-murder purposes *1021 must begin before or during the robbery and murder. That is part of the constitutional error in this case. Nor was there any reason for the jury to know that this definition was irrelevant to the special-circumstance instructions. To the contrary, the jury had been instructed specifically that it could find special circumstances if “with reckless indifference to human life and as a major participant, [Pulido] aided, abetted, counseled, commanded, induced, solicited, requested, or assisted in the commission of the crime of robbery ... which resulted in the death of a human being.” CALJIC 8.80.1 (emphasis added).
B
The majority looks to the special-circumstances instruction and reasons the jury could not possibly have concluded that Pu-lido acted “with reckless indifference to human life and as a major participant, aided, abetted, ... or assisted” in the robbery. I respectfully disagree.
The California Supreme Court has explained that “the generally accepted meaning of the phrase, ‘reckless indifference to human life,’ in common parlance ... conveys to the jury the requirement of a defendant’s subjective awareness of the grave risk to human life created by his or her participation in the underlying felony.” People v. Estrada, 11 Cal.4th 568, 46 Cal.Rptr.2d 586, 904 P.2d 1197, 1203 (1995). The meaning of the phrase is clear enough that it need not be defined for a jury. See id. (explaining that the phrase “does not have a technical meaning peculiar to the law”). But it does not require that the prosecution show that the defendant was indifferent to any specific human life. Nor does it add a contemporaneity requirement. Rather, it is typically accompanied by an instruction that the special circumstance only applies if the murder occurred “while” the defendant was participating in the robbery (again, no such instruction was given here). In turn, the defendant’s intent to commit the underlying felony, combined with the general indifference he shows in engaging in the crime in the first place, which both precede the specific homicide, render the defendant culpable for murder.
Absent the contemporaneity requirement typically included in the special circumstance instruction, and in tandem with a prior erroneous instruction that the defendant could be guilty of murder if he did not join a robbery until after the victim had been shot, “reckless indifference to human life” could encompass the act of assisting a convicted felon who is possibly high on crack cocaine drive away from a robbery with a loaded gun, where that person has already shot one person and apparently would not have a problem harming anyone else who stands in the way of his escape. In other words, a juror might have concluded that Pulido was recklessly indifferent to the victim’s life, or to human life more broadly, even if he or she believed the victim was already dead before Pulido participated in the robbery.
C
The majority concludes the jury’s uncertainty regarding the felony-murder instructions had no bearing on its understanding of the special-circumstance instructions. The record, however, demonstrates the jury’s deep seated confusion as to both the erroneous instructions and the instructions for special circumstances.
The three jury questions reveal that the jurors were struggling with the requirements of aider-and-abettor liability, felony-murder, and the special circumstance robbery-murder. See, e.g., Shafer v. South Carolina, 532 U.S. 36, 52-53, 121 S.Ct. 1263, 149 L.Ed.2d 178 (2001) (jury inquiry may provide evidence of jury confusion); Simmons v. South Carolina, 512 U.S. 154, *1022 178, 114 S.Ct. 2187, 129 L.Ed.2d 133 (1994) (O’Connor, J., concurring) (same); Bollenbach v. United States, 326 U.S. 607, 611—12, 66 S.Ct. 402, 90 L.Ed. 350 (1946) (same). The jury inquired about the meaning of the special circumstance instruction. Indeed, the jury requested “instructions special circumstances for both count 1 and count 2.” This inquiry demonstrates the jury’s confusion, given that the special circumstance does not attach to either count, but rather is intended to be a special finding of contemporaneity between the two counts. This question is especially important given the State’s argument that the special circumstance finding implicitly incorporated a finding of contemporaneity.
The jury’s question of whether aider- and-abettor liability requires “knowledge [of the purpose of the perpetrator] prior to the commission of the crime or during the commission of the crime” demonstrates that some jurors were confused as to the timing requirements for aider-and-abettor liability. That is, they were unsure whether Pulido could be found guilty on an aider-and-abettor theory if he became aware of the principal’s purpose only during or after commission of the crime. This question is especially important because the jury was permitted to find special circumstances based on an aider-and-abettor theory, and, as it was instructed, aider- and-abettor liability “continues so long as the stolen property is being carried away.” The jury’s question as to whether it could find felony murder based solely on actual “facilitat[ing] by aiding,” or whether it must also find that Pulido intended for the robbery to occur, also demonstrates that at least some jurors believed that Pulido might have developed knowledge and intent only after the actual theft had occurred.
Important to the question of prejudice, the judge did not answer any of those questions directly. Instead, he merely referred the jurors back to them flawed and inconsistent instructions. The fact that the jury did not continue to ask for clarification does not imply it needed no more help. See Weeks v. Angelone, 528 U.S. 225, 234, 120 S.Ct. 727, 145 L.Ed.2d 727 (2000) (“Given that petitioner’s jury was adequately instructed, and given that the trial judge responded to the jury’s question by directing its attention to the precise paragraph of the constitutionally adequate instruction that answers its inquiry, the question becomes whether the Constitution requires anything more.”); Morris, 273 F.3d at 842 (“Also unpersuasive is the argument that, because the jury asked for only a general explanation of special instruction 60, there is no way to be sure what the jury was confused about.”).
The majority’s rationale implies this is a case of a technical error requiring only a technical fix. Not so. The instruction for murder was patently incorrect. The jury repeatedly expressed its confusion to the presiding judge who responded to the jury’s notes without clarifying the question of timing adequately. Its questions refute the argument that the jury understood and applied the contemporaneity requirement that was formally included in the verdict form. It is not only possible but probable that the jurors were confused as to the timing and intent requirements in the felony-murder and special circumstance instructions.[1]
*1023 The majority maintains that the use of the word “during” in the special-circumstance verdict form ameliorates any error.[2] But the assumption that this isolated reference to contemporaneity somehow eclipses both the admitted constitutional error and the manifest jury confusion violates the very rationale that the majority relies upon — “[W]e accept at the outset the well established proposition that a single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge.” Cupp v. Naughten, 414 U.S. 141, 146-47, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973).
D
The majority agrees with the State that the evidence does not support Pulido’s theory of the case. In particular, the majority suggests the fingerprint found on the Coke can is fatal to Pulido’s prejudice argument and that Pulido did not articulate a satisfactory explanation for the presence of the fingerprints on the can.
While it is true that the most plausible explanation for the presence of the fingerprint is that Pulido brought it to the counter as a distraction before the theft and shooting, it is not the only plausible explanation. That a defense attorney may limit the number of theories he proposes does not in turn limit the jury’s ability to consider plausible alternate explanations— such as the possibility that Pulido moved the Coke can, which was on the counter, when he went to grab the cash register, which presumably was also on the counter, and upon which Pulido’s fingerprints were also discovered.
Moreover, the jury’s third question— whether it could find felony murder based solely on actual “facilitating] by aiding,” or whether it must also find that Pulido intended for the robbery to occur — clearly indicates that at least some jurors had' reasonable doubts about the State’s proffered explanation for the fingerprint. If the jury had accepted the prosecutor’s explanation, that Pulido brought the Coke can to the counter as a distraction, it would almost certainly have concluded that Pulido actually intended for the robbery to occur. If Pulido were inside the store during the robbery but did not know his uncle’s plans in advance, however, and Aragon took advantage of the distraction that Pulido incidentally provided when he actually attempted to purchase the Coke, then Pulido would arguably have facilitated the robbery by helping his uncle, without actually intending for the robbery to occur.
Similarly, the State argues that, if the jury believed Pulido carried out the cash register voluntarily, he must have been aiding and abetting the robbery from the beginning. It is certainly plausible, however, that Pulido — a sixteen year old boy who owned a gun, who was to steal a car two weeks later, and who lived with an uncle with a criminal record and a possible crack cocaine addiction, Pulido, 2005 WL 6142229, at *1-*3 — heard the gun shot, *1024 realized that his uncle was holding up the gas station, and decided to help.
Jurors are not required to accept one or another proffered explanation of the evidence, but rather are called upon to weigh and evaluate the evidence for themselves in light of the law as explained to them by the court. In this case, the law was explained improperly, and I cannot reasonably conclude that the error did not substantially and injuriously effect the verdict.
II
The instructions allowed for a conviction for felony-murder and a finding of special circumstance robbery-murder even if Pulido became a knowing participant only after the robbery and shooting were completed. The jurors’ questions suggest that at least one juror would have voted to acquit Pulido of felony-murder and special-circumstance charges if the jury had been properly instructed that contemporaneity was a necessary finding. Like the district court, the record in this case leaves me with “grave doubt” as to whether the erroneous instructions had a substantial and injurious effect on the jury’s verdict.
Accordingly, I respectfully dissent.

. The State argues that it is not reasonably probable that the jury used a post-killing aiding and abetting theory to reach the special circumstance finding. This is a slight misstatement of the Brecht standard. In the face of conflicting evidence and testimony, jurors do not necessarily decide 'what happened' or reach a verdict based on one single narrative of events that they accept as true. See, e.g., CALJIC 8.80.1 (instructing jury in case it is "unable to decide whether the defendant was the actual killer or an aider-and-abettor”). In *1023 contemplating different possible scenarios, a jury may find beyond a reasonable doubt that, whatever happened, it fitted into the broad definition of the crime with which the defendant has been charged. The question is not whether some jurors determined that Pulido definitely did not form the intent to join the robbery until after the clerk was killed, but rather how likely it is that they harbored some reasonable alternative theories about the timing, theories which, if properly instructed, they would have known were actually reasonable doubts about Pulido’s guilt of felony murder.

. The special-circumstance verdict read that Pulido “engaged in or was an accomplice of or attempted commission of robbery during the commission of [murder].”